227 So.2d 865 (1969)
ABNER'S BEEF HOUSE CORPORATION, a Florida Corporation, Abner's Roast Beef, Inc., a Florida Corporation, Abner's Restaurant Corporation, a Florida Corporation, and Lum's, Inc., a Florida Corporation, Petitioners,
v.
ABNER'S INTERNATIONAL, INC., a Florida Corporation, Respondent.
No. 38558.
Supreme Court of Florida.
October 29, 1969.
Rehearing Denied December 1, 1969.
Joe N. Unger, of Smith & Mandler, Miami Beach, for petitioners.
Thomas Tew, Miami, for respondent.
ERVIN, Chief Justice.
This case was certified by the District Court of Appeal, Third District, as one *866 presenting a question of great public interest. The District Court's opinion and judgment are reported under Abner's International, Inc. v. Abner's Beef House Corp., in 220 So.2d page 683, et seq.
Reference to the reported opinion of the District Court will suffice to inform as to the nature of the case and the issues involved.
Our study of the case leads us to believe we should quash the decision of the District Court and reinstate the Circuit Court's decree which was reversed by the District Court.
We first call attention to the pertinent provisions of Chapter 495, F.S., relating to trademarks, tradenames and service marks, and to other authorities which have led us to reach the result indicated.
Section 495.161 expressly provides that Chapter 495 shall not adversely affect or diminish rights or the enforcement of rights in marks acquired in good faith at any time at common law.
F.S. Section 495.131, F.S.A., which provides infringement of a registered mark shall subject the infringer to the liability of a civil action by the owner of the mark and to the injunctive and damage remedies of F.S. Section 495.141, F.S.A., is made subject to the common law rights in marks preserved by Section 495.161.
F.S. Section 495.151, F.S.A., does, however, obviate the necessity in an injunction suit to enjoin a subsequent use of a similar mark that plaintiff show there is competition between parties or a confusion as to the source of goods or services, which showing was a requisite under the common law. See El Modello Cigar Manufacturing Co. v. Gato, 25 Fla. 886, 7 So. 23, 6 L.R.A. 823.
F.S. Section 495.031(1) (d), F.S.A., provides that any person who has adopted and is using a mark shall, among other things, when applying for registration state that "no other person except a related company has the right to use such mark in this state either in the identical form thereof or in such near resemblance thereto as might be calculated to deceive or confuse or to be mistaken therefor."
From F.S. Section 495.011(11), F.S.A., the definition section of the statute, we note that a mark is deemed to be "used" from the first time it is placed tagged, labelled or displayed on or in connection with a sale of goods or rendition of service in the state.
F.S. Section 495.061, F.S.A., provides that upon registration of a mark with the Secretary of State, he shall issue a certificate of registration to the person claiming ownership which, among other things, shall indicate the date claimed for the first use of the mark. Said section also provides such a certificate or a certified copy shall be admissible in evidence as competent proof of the registration in any judicial proceedings, and prima facie evidence of the validity of the registration, registrant's ownership of the mark, and of registrant's exclusive right to the mark in this state, "subject to any conditions and limitations stated therein."
The District Court of Appeal refers to Section 495.061 summarized above, stating that the plaintiff (Respondent) tendered in evidence its certificate of service mark, and thereby presented a prima facie case that plaintiff was the owner of the mark and had the exclusive right to use said service mark in connection with its business in this state. The Court then adds: "It was the defendant's burden to go forward with evidence to show the invalidity of the plaintiff's registration or facts showing plaintiff's lack of ownership in the mark." The remaining portion of the District Court's opinion bases its reversal of the Circuit Court on the language of the statute, concluding that because plaintiff had registered the "Abner's" mark pursuant to the statute and the defendants had not registered it, plaintiff had the exclusive right to use the name "Abner's" over defendants' use and all others. It added: "The trial court having found that the *867 plaintiff is the owner of a registered service mark under the State, the plaintiff was therefore entitled to injunctive relief against the defendants in protecting its service mark. * * * The proper registration by the plaintiff of his service mark, a part of which is the name, `Abner's,' secured to the plaintiff the exclusive right to use the service mark in connection with his business."
We do not consider the statute has an exclusionary effect in every registration situation; or that it ipso facto casts the burden of proof upon a defendant sued by a registrant different from evidentiary rules governing the burden of proof in any injunction suit under the issues made by the pleadings therein. Compare Keller Products, Inc. v. Rubber Linings Corp. (C.A.7th Ill.), 213 F.2d 382, 47 A.L.R.2d 1108. Prior registration is only prima facie evidence of the exclusive ownership of a particular service mark. The timely bona fide use in the state by another of a similar mark to one registered may materially affect the claimed right of exclusiveness by the registrant. Such diverse use may be a valid defense in a suit for an injunction authorized by the staute.
Only recently we said in Junior Food Stores of West Florida, Inc. v. Jr. Food Stores, Inc., 226 So.2d 393, opinion filed September 17, 1969:
"The true effect of respondent's registration of its tradename and sign design was not to invest it instantaneously with a right to `exclusive use', but rather to establish for respondent the basis for invoking common law tradename protection principles which are predicated upon a prior use of a tradename as against the subsequent use by another. * * *"
While this statement was made in reference to a case not arising under Chapter 495, F.S., as revised by Chapter 67-58, nevertheless we believe it enunciates a general principle applicable to the present case. Revised Chapter 495 only extends prima facie validity to a registrant's claimed exclusive ownership of a service mark, expressly making such prima facie exclusive ownership subject to collateral rights of others accruing under the common law.
At this point we insert text statements from the chapter in 52 Am.Jur. on Trademarks, Tradenames, etc., which we consider have general pertinency to the issues of this case.
"Ordinarily, the right to a trademark or tradename is acquired, originally, by appropriation and use as such. With respect to the manner, extent, and duration of the use required for such purpose, no very precise rules can be stated. While no definite period of use is required, it has been stated that it is necessary that the name or mark shall have become associated in the public mind with the producer or owner of the goods to which it is applied * * *." 52 Am. Jur., p. 518.
The mere adoption of, or an intention to appropriate, a particular mark or name as a trademark or tradename, without actual use thereof as such in the market, confers no right thereto, even though such adoption or intention is publicly declared. * * *" 52 Am.Jur., p. 519.
"* * * It has been decided that if, when the defendant adopted a tradename, the plaintiff had not acquired any right in his tradename, and it had not become identified with the plaintiff among dealers and the general public, and the defendant adopted his name in good faith, without any intention to wrong the plaintiff or acquire his business, then neither acquired any better right to the use of his tradename than the other to the use of his." 52 Am.Jur., p. 520, citing Giragosian v. Chutjian, 194 Mass. 504, 80 N.E. 647, 120 Am.St.Rep. 570.
"It has frequently been declared that the registration of a trademark does not create or confer any additional substantive rights therein; the effect of registration *868 statutes, ordinarily, is merely to recognize rights which have already been acquired by appropriation, and to provide additional remedies for the protection thereof. * * *" 52 Am.Jur. p. 534. "The admission of a trademark to registration is not conclusive as to the validity thereof, and does not prevent collateral attack thereon. * * *
"Under most statutes, registration is prima facie evidence of ownership, and only prima facie evidence, except where it is otherwise provided by the terms of the act. * * *" 52 Am.Jur. p. 535.
We are at liberty under the District Court certification of the case to review the record, including the transcript of the testimony, and to determine the case on the merits.
The evidence discloses Petitioner Lum's Inc., since 1956 has put into operation some two hundred restaurants under the name, "Lum's," mainly through franchises. During the first half of 1967 Respondent's organizers decided to start a business selling restaurant franchises. The franchised restaurants would engage in the same fast-service sandwich and beverage business as the Lum's restaurants. Respondent selected the name "Abner's" as the service mark for their new business operation. Petitioners claim the name was selected because of its natural affiliation in the public mind with the former popular radio program known as "Lum and Abner." On the other hand, Respondent claims the name "Abner's" was selected because "L'il Abner" was a favorite cartoon character of one of the Respondent's organizers.
The service mark, "Abner's," was issued by the Secretary of State on October 4, 1967, to Respondent pursuant to its sworn application of October 3, 1967 which states the mark was first used on the same date as its application. As of the date of its application (October 3, 1967) Respondent, upon advice of counsel to establish a "use" of the service mark for registration, had sent through the mail six sandwiches which had been stamped with an Abner's mark, to addressees who were friends of Respondent's organizers.
On March 1, 1968 Petitioners opened a restaurant in Miami under the name "ABNER'S." At the time of trial, Petitioners had executed twenty franchise agreements under the name, "ABNER'S BEEF HOUSE." They also had other "Abner's Beef House" operations under construction in Miami, as well as in Alabama, Ohio and Michigan.
At the time of trial there was no restaurant operating under Respondent's franchise. Prior to October 3, 1967, the date of its application for "Abner's" service mark, Respondent was operating no restaurant in this state. However, beginning in January, 1967 until they secured their service mark in October, 1967, Respondent promoted its franchise and restaurant service business; it had its service mark designed by a commercial artist, to-wit: figure of a large Western-style boot within which is inscribed, "Abner's, Sandwich Parlors," and "* * * World's Best"; had an architect sketch a model franchise restaurant building; had its described design printed on postcards, stationery, advertising, brochures, and distributed the same throughout Dade and Broward counties; made restaurant surveys; studied the fast food service franchising business; conducted negotiations with persons interested in obtaining franchises from Respondent; sold its first franchise in Miami, which is currently in operation.
The Respondent admits it did not have any restaurants in operation or any franchises sold prior to October 4, 1967, the date of its certificate of service mark.
We agree, as does the District Court, that the Circuit Court was correct in finding from the evidence summarized above that neither of the parties had acquired as against the other the exclusive right to the name "Abner's" through common usage sufficient to obtain ownership *869 of a secondary meaning in the name, "Abner's."
Our point of cleavage with the District Court is its finding that Chapter 495 itself afforded Respondent an exclusive right to the mark by virtue of its registration of the name, "Abner's."
We do not find that the Petitioners (defendants) failed to carry their burden in the injunction suit to the extent required by their pleadings and evidence that they had bona fide acquired certain rights to the use of the name "Abner's" under the common law by contemporaneous usage despite Respondent's registration. We believe the Solomonic decision of the Circuit Judge is the best result that could be arrived at under these particular facts.
We do not find from the facts that either party had acquired exclusive rights over the other to the use of the name "Abner's" by virtue of a secondary meaning established by usage, inasmuch as our statute takes into consideration and recognizes common law rights gained by usage in marks. We agree with the Circuit Court the parties were in "dead heat" rather than in tandem (plaintiff ahead of defendants) in their actual contemporaneous usage of the name "Abner's" within relevant periods prior to the final decree.
In such situation we do not believe it was the intent of Chapter 495, F.S., to authorize one of the parties to acquire a preemptive use of the service mark throughout the entire state by the mere fact of prior registration unattended by prior us age sufficient under the common law to vest in registrant a secondary meaning use. Especially is this so where the party not registering is actually using a similar service mark in his business operations and rights thereto under common law are in process of inuring to him.
A mere paper application for registration of a service mark which is not in fact coupled with and supported by actual usage of the mark sufficient to vest in registrant's use a secondary meaning, will not defeat a similar use by a competitor where the latter has actually established and placed in operation businesses identified by such mark.
The rationale of our recent holding in Junior Food Stores of West Florida, Inc. v. Jr. Food Stores, Inc., supra, indicates our reluctance to interfere in free enterprise and restrain business practices, including the use of names or other trade identifications unless it clearly appears that vested rights therein have been obtained by usage recognized at common law. The new statute, Chapter 495, is intended to supplement the common law and systematize the subject of tradenames and trademarks acquired by usage by affording identification and protection of the same for the benefit of their registering owners. But by its terms the statute is not intended as a shortcut to vest by mere registration the exclusive ownership of a tradename or trademark in the state absent the supporting factor of common law usage, and especially so where prior rights of others have accrued in the mark, or which are in the process of being bona fide acquired, under the common law.
It is directed that Respondent's registration of the service mark be amended pursuant to F.S. Section 495.061(2), F.S.A., to show that it is the subject of a limitation, viz., it does not exclude Petitioners' use of the name, "Abner's." Respondent's registration does, however, exclude all others save Petitioners from the potential use of the name, "Abner's," in a similar restaurant franchise business in the state.
We answer the certified question as above indicated; quash the decision of the District Court and remand the case with direction that a final decree be entered in conformity with our opinion and judgment.
It is so ordered.
THORNAL, CARLTON, ADKINS and BOYD, JJ., concur.