**SAFEWAY STORES, INCORPORATED, Plaintiff-Appellant, Cross-Appellee,**

v.

**SAFEWAY DISCOUNT DRUGS, INC., Defendant-Appellee, Cross-Appellant.**

**No. 80–5823.**

United States Court of Appeals, Eleventh Circuit.

May 10, 1982.

Smathers & Thompson, David S. Batcheller, Robert Willise Wells, Miami, Fla., for plaintiff-appellant, cross-appellee.

Scherman & Zelonker, P. A., Regina F. Zelonker, Paul I. Scherman, Hialeah, Fla., for defendant-appellee, cross-appellant.

Before TUTTLE, KRAVITCH and JOHNSON, Circuit Judges.

JOHNSON, Circuit Judge:

Safeway Stores, Inc. appeals the district court's denial of an injunction preventing Safeway Discount Drugs, Inc. (Discount) from any use of the word Safeway. Discount cross appeals, urging that this Court overturn the district court injunction limiting the manner in which Discount may use the word. We reverse and rule in favor of Safeway Stores.

### I.

Safeway Stores sued Discount after it had received a dunning letter from one of Discount's creditors and after Discount stated that it would not stop using the Safeway name until Safeway Stores opened supermarkets in Florida. Safeway Stores is a large grocery chain with more than 2400 stores worldwide. Most of its stores are west of the Mississippi. None are in the southeastern United States. It has, however, been qualified to do business in Florida since 1947, has been purchasing Florida farm and grove products in state since that year, and presently has two purchasing offices in state that buy $50 million in products each year. Safeway Stores has a large advertising budget but does not advertise in the southeastern United States. It registered the name "Safeway" with the United States Patent Office in 1961 as a service mark and with the State of Florida in May 1968, also as a service mark.

Discount was incorporated in late 1967. It has two small stores in Miami Beach that sell drug sundries, general household goods, and certain food items. Discount advertises locally only, although there is some out-of-state distribution of the newspapers in which it advertises.[1]

1. The district court stated that Discount registered the mark "Safeway Discount Center" with the State of Florida in early 1968. The record does contain newspaper notices of Dis-

The trial court, sitting without a jury, found that the two companies operate in distinct, non-overlapping markets; that Safeway Stores had made no advertising penetration into Discount's market area; that Discount did not intend to take the benefit of Safeway Stores' name and reputation; that Safeway Stores had not acquired a secondary interest in the word Safeway that would protect it from Discount's use of the word in an independent market; and that there was no likelihood of public confusion of the two companies. It concluded that Discount had violated neither federal nor state trademark laws. Noting, however, that Discount could not use the word Safeway deceptively, the court ordered Discount to use only signs saying "Safeway Discount Center" in type of uniform size, on a single line, and in a style and color not confusingly similar to the type used by Safeway Stores. The court denied Discount's request for attorneys' fees. Safeway Stores disputes the ruling that there was no violation of federal or state trademark laws. Discount advocates dissolution of the injunction limiting the design of its signs and seeks an award of attorneys' fees.

## II.

■ Before we analyze the parties' claims under federal and state law, we believe it would be useful to distinguish various uses of the word Safeway. Throughout this litigation, the parties have indiscriminately referred to the word as a trademark, service mark, and trade name. Each category indicates a different use of a word: a trademark identifies and distinguishes a product, a service mark a service, and a trade name a business. *See In re Lyndale Farm*, 186 F.2d 723, 726 (Cust. & Pat.App. 1951); 15 U.S.C.A. § 1127. Use of a word may fall within more than one category;

indeed, as a practical matter distinctions between use in one category and use in another may be difficult to make. *See American Steel Foundries v. Robertson*, 269 U.S. 372, 381, 46 S.Ct. 160, 162, 70 L.Ed. 317 (1926); 4 R. Callman, *The Law of Unfair Competition, Trademarks and Monopolies* § 98.4(e) (1981). The category in which use of a word falls may, however, at times determine the protection accorded the use. Trade names, for example, though protected at common law, cannot be registered under and are not protected by the Lanham Act. *In re Pennsylvania Fashion Factory, Inc.*, 588 F.2d 1343 (Cust. & Pat.App. 1978); *In re Walker Process Equip.*, 233 F.2d 329 (C.C.P.A. 1956); *Lyndale Farm, supra*. In this case, Discount does not dispute that Safeway Stores is protecting a valid registered service mark, not a mere trade name, so there is no question about the applicability of the Lanham Act. The distinctions among the categories do, however, become critical in our discussion of Florida law, under which we hold that Safeway as a trade name, but not as a trademark or service mark, is protected.

### A. Lanham Act

■ The Lanham Act, 15 U.S.C.A. § 1051 *et seq.*, provides that no person shall, without consent of the registrant, use in commerce any service mark if "such use is likely to cause confusion, or to cause mistake, or to deceive". *Id.* at § 1114(1)(a). A determination of likelihood of confusion, mistake, or deception is a matter of fact that we may overturn only if clearly erroneous. *E.g., Sun Banks of Florida v. Sun Fed. Sav. & Loan*, 651 F.2d 311, 314 (5th Cir. 1981); *Exxon Corp. v. Texas Motor Exchange Corp.*, 628 F.2d 500, 504 (5th Cir. 1981); *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 258 (5th Cir.), *cert. denied*, 449 U.S. 899, 101 S.Ct. 268 (1980).[2] In

count's intent to register the mark, but we have discovered no evidence in the record showing that Discount actually did register the mark. We need not resolve whether the district court's finding was clearly erroneous, however, since the outcome of this case does not depend on Discount's registration of its mark.

2. The Eleventh Circuit Court of Appeals has adopted the case law of the former Fifth Circuit as its governing body of precedent. This precedent is binding unless and until overruled or modified by this Court en banc. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209–11 (11th Cir. 1981) (en banc).

this case, however, the district court labored under a theory that limited the factors relevant to a finding of likelihood of confusion.[3] Quoting a statement in *John R. Thompson v. Holloway*, 366 F.2d 108, 114 (5th Cir. 1966), that "[w]here the unauthorized use of a conflicting mark is confined to a distinct and geographically separate market, there may be no present likelihood of public confusion", the court ruled that, because Safeway had no stores in Florida and no advertising penetration in the state, there was no likelihood of confusion. More recent cases have followed a more complex, multifactor analysis that includes "the type of trademark at issue; similarity of design; similarity of product; identity of retail outlets and purchasers; identity of advertising media utilized; defendant's intent; and actual confusion."[4] *Roto-Rooter Corp. v. O'Neal*, 513 F.2d 44, 45 (5th Cir. 1975) (footnotes omitted); *see also Sun Banks, supra*, 651 F.2d at 314–19; *Exxon Corp., supra*, 628 F.2d at 504; *Amstar, supra*, 615 F.2d at 259.[5] Considering these factors, we are left with "the definite and firm conviction that a mistake has been committed" by the district court, *see United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541–42, 92 L.Ed. 746 (1948), and hold that the district court was clearly erroneous in finding no likelihood of confusion between the marks of Safeway Stores and Discount. We proceed to consider the *Roto-Rooter* factors.

■ In considering the type of mark involved, we must determine the strength of the mark, by which we mean its distinctiveness. A useful manner of categorizing marks, in ascending order of strength, involves determining whether the words of the trademark are (1) descriptive or generic, (2) suggestive of a product or service, (3) arbitrarily applied to a product, or (4) coined words. *See Tisch Hotels, Inc. v. American Inn, Inc.*, 350 F.2d 609, 611 n.2 (7th Cir. 1965). The words of a mark are not, however, the sole factors determining its strength. Also important is the extent of third-party use of the words of the mark. *See Sun Banks, supra*, 651 F.2d at 316.

The district court made no finding on the strength of the Safeway mark. One court has found the word to be a coinage. *Safeway Stores v. Dunnell*, 172 F.2d 649, 654 (9th Cir.), *cert. denied*, 337 U.S. 907, 69 S.Ct. 1049, 93 L.Ed. 1719 (1949).[6] Other than in its use as a mark, the word Safeway does indeed have no meaning, but we do not credit it with the full strength of a coinage since the word merely is a combination of

---

One Fifth Circuit case has suggested that a determination of likelihood of confusion is a mixed question of law and fact. *B. H. Bunn Co. v. AAA Replacement Parts Co.*, 451 F.2d 1254, 1261 (5th Cir. 1971). The overwhelming weight of precedent in the former Fifth Circuit, however, indicates that *Bunn* is an anomaly and not a correct statement of the law.

3. In *Kentucky Fried Chicken v. Diversified Packaging*, 549 F.2d 368, 384 (5th Cir. 1977), the Court noted that "when a district court labors under a misapprehension concerning the governing legal norms, the 'clearly erroneous' test no longer circumscribes appellate review." More recently, however, the former Fifth Circuit has indicated that that statement "may not be taken as an erosion of the standard of review applicable to a finding of likelihood of confusion." *Sun Banks of Florida v. Sun Fed. Sav. & Loan*, 651 F.2d 311, 314 (5th Cir. 1981). Our review of the district court's ruling, therefore, is governed by the clearly erroneous test even though the court's analysis of the factors relevant to a finding of likelihood of confusion was incomplete.

4. The statement in *B. H. Bunn, supra*, 451 F.2d at 1264, that intent has no relevance to a finding of trademark infringement, like the assertion in that case concerning the governing standard of review, *see* note 2, *supra*, is outdated in light of the overwhelming weight of subsequent former Fifth Circuit law.

5. Our review of district court findings on each of these subsidiary factors, like our review of the court's ultimate determination of whether there exists a likelihood of confusion, is governed by the clearly erroneous test. *Kentucky Fried Chicken, supra*, 549 F.2d at 382, 384.

6. *See also Safeway Stores, Inc. v. Safeway Properties, Inc.*, 307 F.2d 495, 498–99 (2nd Cir. 1962) (noting issue as to whether Safeway was a coinage or merely a descriptive term, but not resolving issue because finding that word had acquired secondary meaning identifying it with plaintiff).

two other common words. Although not descriptive of the retail grocery services Safeway Stores provides, the word is suggestive of the reliability of the services. *Cf.* 3 R. Callman, *supra*, at § 71.2 (discussing suggestive trademarks).

Discount has provided the names of a score of businesses that use the word Safeway in their names.[7] That number is, however, substantially less than in other cases in which we have found significant third-party use. *See Sun Banks, supra*, 651 F.2d at 316 (4400 users); *Amstar, supra*, 615 F.2d at 259 (72 users); *Armstrong Cork Co. v. World Carpets, Inc.*, 597 F.2d 496, 505 (5th Cir.) (85 users), *cert. denied*, 444 U.S. 932, 100 S.Ct. 277, 62 L.Ed.2d 190 (1979). Moreover, we believe a further consideration relevant in determining the significance of third-party use is the entire name a third party uses, as well as the kind of business in which the user is engaged. Third-party users that incorporate the word Safeway along with distinctive additional words, or engage in a business different from that of Safeway Stores, may not diminish the strength of the Safeway mark. The businesses that Discount points out here generally use the word Safeway along with some relatively precise description of the goods or service the business provides, such as "carpet and cleaning" or "hurricane awnings." All also seem involved in relatively specialized businesses not closely related to the fairly general retail trade of Safeway Stores.[8] The third-party users mentioned in this case do not significantly diminish the strength of the Safeway mark. We conclude that the mark is a relatively strong one with at least the qualities of a suggestive mark and that it is entitled to protection without proof of secondary meaning.[9]

We turn next to whether the designs in which the parties incorporate the word Safeway are similar. Our determination, we note, must be based on the overall effect of the designs, not on individual features. *Amstar, supra*, 615 F.2d at 260–61. The district court made no explicit finding on similarity of design, but, in requiring Discount to use signs that say "Safeway Discount Center" in type of uniform size, on a single line, and in a style and color not confusingly similar to the type used by Safeway Stores, it implicitly held that Discount's designs presently are confusingly similar to those of Safeway Stores.

We agree that the overall effect of the designs of Safeway Stores and of Discount is similar. Safeway Stores spells out Safeway in large, capitalized, block letters in its signs, price labels, letterhead, and advertising. It does use a logo of a broad S within a circle on its letterhead and at times in its advertising, and its letterhead also includes the words "Stores, Inc." in capital letters approximately half the size of those spelling out Safeway. Neither the logo nor the additional words on the letterhead, however, are sufficiently important for us to alter our conclusion that the word Safeway is the dominant theme in any sign of or reference to Safeway Stores. Discount's use of the word Safeway in large, capitalized, block letters on its signs, letters, and advertising is strikingly similar to the designs of Safeway Stores. *See Safeway Stores, Inc. v. Stephens*, 281 F.Supp. 517,

---

7. Two cases vaguely mention that the word Safeway has been used by many companies. *Safeway Stores, Inc. v. Safeway Quality Foods, Inc.*, 433 F.2d 99, 101 (7th Cir. 1970); *Safeway Stores v. Rudner*, 246 F.2d 826, 829 (9th Cir. 1957). The references are not, however, sufficiently explicit or precise to be useful in our analysis.

8. We find the additional names of these businesses significantly more distinctive than the more general additional words that Discount applies to its business name. *See infra.* We also find them more specialized than and less related to Safeway Stores' retail trade than is Discount. *See infra.* We do not, however, imply any judgment concerning whether these third-party users are themselves illegally using the word Safeway.

9. Had we held, as Discount argues, that the word Safeway is merely descriptive, it could be protected only if the word had acquired a secondary meaning peculiar to Safeway Stores. *See Sun Banks, supra*, 651 F.2d at 315. Once a mark is shown at least to have a suggestive quality, secondary meaning need not be shown. *Id.*

521 (W.D.La. 1967) (noting use of block letters similar to those of plaintiff enhanced the likelihood of confusion). Discount does also include the words "Discount Center," "Discount Drugs, Inc.," or "Discount" in its references to itself. These additional words, however, are usually on lines below the word Safeway and often are in letters of smaller size than those spelling out Safeway. Moreover, "[w]hether an addition is sufficient to prevent confusion in a particular instance depends upon the strength of the main part of the mark and the distinctiveness of the mark and the distinctiveness of the additional feature." 3 R. Callman, *supra.* § 82.1(i), at 722. Here, as we have noted, the word Safeway is a relatively strong trademark. The words "discount center" or "discount drugs" are quite common and lend no distinctiveness to Discount's name.

Our third consideration is the similarity of the products of Safeway Stores and Discount. As the district court noted, Safeway Stores primarily sells groceries while Discount sells non-grocery goods. There is, however, significant overlap in each company in the goods that are dominant sales items of the other; Safeway Stores sells items, such as brooms, that Discount emphasizes and Discount sells some grocery items, primarily canned and boxed foods, that are Safeway Stores' specialty.

Another factor the *Roto-Rooter* Court found relevant, the similarity of the retail outlets and purchasers of goods of the parties, has a peculiar application here because of the unusual fact situation involved. The district court emphasized that there was no overlap of the markets that the stores of each company serve. That finding is correct but does not constitute a complete analysis of the considerations relevant under this factor. Although each company emphasizes different goods in its stores, both conduct a general retail trade involving a wide variety of goods. This is in contrast to the situation present in such cases as *Amstar, supra,* 615 F.2d at 262, in which the Court found that the retailing of a company's sugar in stores owned by others had little similarity to the retail outlets

of a chain of pizza parlors. Also, although Safeway Stores does not have retail operations in Florida, it does conduct substantial in-state food purchases. These operations establish the presence of the company in Florida, even if not in an aspect of its business for which it is generally known, and make it more likely that people in the state would mistake Discount as being a part of Safeway Stores. Another consideration is that, although the particular individuals to whom the companies cater may differ, the large number of tourists in the Miami Beach area would cause some overlap in the number of actual or potential customers. Finally, even if the particular individuals buying goods at the parties' stores differ, the parties would cater to the same general kinds of individuals, again in contrast to the facts in *Amstar,* in which the Court found that customers of the pizza parlors at issue, unlike those of a sugar company's products, would constitute a specialized clientele of college students.

Next we consider the identity of the advertising media of the parties. Both Safeway Stores and Discount use large newspaper advertisements of generally similar format. Although they do not advertise in the same newspapers, there would be some overlap in readers, particularly in terms of visiting tourists reading the Miami Beach newspapers.

The district court explicitly considered another *Roto-Rooter* factor, the intent of the alleged infringer, and found that Discount did not intend to usurp Safeway's trademark. We do not believe the district court's finding was clearly erroneous.

Perhaps the most important single factor of those the *Roto-Rooter* Court mentions is the presence of actual confusion. *See* 513 F.2d at 46. There is, however, some inconsistency in the opinions of the former Fifth Circuit concerning the quantum of proof necessary to prove significant actual confusion. The Court has stated that "reason tells us that . . . very little proof of actual confusion would be necessary to prove the likelihood of confusion", *World Carpets, Inc.*

*v. Dick Littrell's New World Carpets*, 438 F.2d 482, 489 (5th Cir. 1971), and that evidence of confusion by four individuals showed significant actual confusion. *Roto-Rooter, supra*, 513 F.2d at 46. Nevertheless, courts also have disparaged the significance of evidence of confusion of less than fifteen individuals over three years, *Sun Banks, supra*, 651 F.2d at 319; of three individuals over fifteen years, *Amstar, supra*, 615 F.2d at 263; and of two individuals, *Armstrong Cork, supra*, 597 F.2d at 506 & n.15. Perhaps as important as, and helping to explain the various interpretations of the relevance of, the number of instances of confusion are the kinds of persons confused and degree of confusion. Short-lived confusion or confusion of individuals casually acquainted with a business is worthy of little weight, *see id., supra*, while confusion of actual customers of a business is worthy of substantial weight. *See Sun Banks, supra*, 651 F.2d at 319. In this case, there were two instances of actual confusion, one misdirected dunning letter from a creditor of Discount and one customer inquiry at Discount. Although the number of instances is small, the people confused are precisely those whose confusion is most significant: a supplier, presumably relatively familiar with an enterprise since he is actually providing it with goods, and a customer, without whom the business would not exist. We believe, therefore, that the evidence of actual confusion is worthy of some consideration.[10]

Having considered the factors articulated in *Roto-Rooter*, we must now balance our several conclusions to determine whether there is likelihood of confusion in Discount's use of the word Safeway. In favor of Discount is the absence of any intent to infringe on Safeway Stores' service mark. On the other hand, we have found that the mark is relatively strong; that its use by Safeway and Discount is in similar designs; that both Safeway Stores and Discount have the same general retail operation with some overlap of goods and customers; that they advertise in the same kind of media; that Safeway Stores does have a substantial business presence in Florida, even if not in grocery retailing; and that there is some indication, though slight, of actual confusion. Weighing these factors together, we conclude that they clearly show that there likely will be confusion in Discount's use of the word Safeway. We therefore hold that Discount violated the Lanham Act in its use of the word.

B. Florida Law

■ We also believe that Discount violated Florida law in its use of the word Safeway. Section 495.151, Florida Statutes Annotated, states that any person using a mark or trade name may sue a subsequent user of the mark or name. A court may enjoin a subsequent user if it appears "that there exists a likelihood of injury to business reputation or of dilution of the distinctive quality of the mark [or] name ... notwithstanding the absence of competition between the parties or of confusion as to the source of goods or services." Commenting on Section 495.151, the Florida Supreme Court has noted that the statute, as its language suggests, eliminates the common law requirements of proof of competition and of confusion.[11] *Abner's Beef House*

---

**10.** The parties attempted to supplement the number of instances of actual confusion with market surveys. The district court, finding the surveys conflicting and of little value, appeared to give them little weight. Its action followed the trend of cases in the former Fifth Circuit, in which market surveys have not fared well as evidence in trademark cases. *See Amstar, supra*, 615 F.2d at 264; *Holiday Inns, Inc. v. Holiday Out in Am.*, 481 F.2d 445, 448 (5th Cir. 1973). In this case, discussion of the surveys would require an extended and intricate analysis that would, at most, conclude that there is some added indication of confusion. Since we find the evidence of a Lanham Act violation by Discount to be sufficiently clear even without whatever additional evidence of likelihood of confusion the survey might provide, such a discussion would be of little value.

**11.** *Compare Junior Food Stores of West Florida v. Jr. Food Stores, Inc.*, 226 So.2d 393, 396–98 (Fla.1969), in which the court noted that, under the common law rule governing trademark protection, it was necessary to inquire into the territorial scope of a business in order to determine whether there was any competition with

*Corp. v. Abner's Int'l Corp., Inc.*, 227 So.2d 865, 866 (Fla.1969).

We conclude in this case that there is a likelihood of damage to Safeway Stores' business reputation. Its receipt of a creditor's dunning letter that should have gone to Discount is sufficient testimony to that likelihood. We turn next to likelihood of dilution, which occurs when the use of a name or mark by a subsequent user will lessen the uniqueness of the prior user's name or mark. *See Holiday Inns, Inc. v. Holiday Out in Am.*, 481 F.2d 445, 450 (5th Cir. 1973) (interpreting Florida law). We noted earlier that the strength of a mark is affected by the number of users of a mark. Given the prominent use of the name Safeway by both parties and the similarity that we have found in the designs in which the parties use the word, we believe that Discount's use would likely cause dilution.

One final hurdle remains for Safeway Stores. Although it need not show competition or confusion to prove a violation of Section 495.151, it still must show prior use in Florida. *Abner's Beef House, supra*, 227 So.2d at 867. The district court found no usage, apparently because Safeway does not have retail stores selling items in Florida. We agree that, under Florida law, Safeway Stores' claims based on use of the word Safeway either as a trademark or service mark must fail because of lack of proof of prior use. Section 495.011(11), Florida Statutes Annotated, explicitly defines use of a trademark as placing it in

some manner on goods, or containers, or displays of goods sold in Florida and defines use of a service mark as use connected with services sold or rendered in Florida. There is no evidence that Safeway Stores has sold goods with the Safeway trademark in the state or that it has sold or rendered services using or displaying a Safeway service mark in the state.

There remains, however, the question whether Safeway Stores has shown use of the word Safeway in Florida as a trade name. Florida statutes provide no explicit definition of use in connection with a trade name. The implicit definition, however, is clear from the statutory definition of use of trademarks and service marks. The statutes, for example, define a service mark as a word used to identify services, Fla.Stat. Ann. § 495.011(2), and they then, as just noted, define use of a service mark as use in connection with services sold or rendered in state. The statutes also define a trade name as a word used to identify and distinguish a business. Fla.Stat.Ann. § 495.-011(6). By extension, use of a trade name is use in connection with some business in state. *See also Junior Food Stores of West Florida v. Jr. Food Stores, Inc.*, 226 So.2d 393, 396 (Fla.1969) (trade name protection extends to first appropriator of name if used in state).[12] The record indicates that Safeway Stores has been buying Florida produce under the Safeway name since 1947,[13] two decades before Discount began

---

or confusion between a prior user of a trade name and a subsequent user. Absent overlap in territorial scope, there was no unfair use of a prior user's trade name. Section 495.151 appears to have eliminated the need for inquiry into territorial scope, requiring only investigation into prior use in state. *See infra*, text at note 12.

**12.** The holding of *Junior Foods* was in the context of a case not arising under current Florida law. Although some portions of the holding appear outdated, *see* note 11, *supra*, the Florida Supreme Court, in a case considering use of trademarks, has since stated that the portion of the holding pertaining to the need to establish prior usage remains valid, even under present law. *Abner's Beef House, supra*, 227 So.2d at 867.

**13.** Safeway Stores did not register Safeway as a trade name. The provisions of Section 495.151, unlike other Florida trademark statutes, *see* §§ 495.131 & 495.141, however, do not limit the protection of the section to registered marks or names. There may, in fact, be some question as to whether Florida law allows registration of trade names. *See* Fla.Stat.Ann. § 495.021 (giving registration requirements for "marks") and Section 495.011(5) (defining "mark" without mentioning trade name as included within definition); *but see Junior Food Stores, supra*, 226 So.2d at 395–96 (dictum seeming to indicate that trade names may be registered under present Florida trademark law).

its business. Safeway Stores therefore has established prior use of the trade name Safeway.[14]

### III.

Discount seeks attorneys' fees under the Lanham Act's provision that "[t]he court in exceptional cases may award reasonable attorneys' fees to the prevailing party."[15] 15 U.S.C.A. § 1117. An award of attorneys' fees is at the discretion of the lower court, *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 608 (3d Cir. 1978), and should be made only in exceptional circumstances and on evidence of fraud or bad faith. *John R. Thompson v. Holloway*, 366 F.2d 108, 116 (5th Cir. 1966); *Salton, Inc. v. Cornwell*, 477 F.Supp. 975, 992 (D.N.J.1979). There is no evidence of fraud or bad faith by Safeway Stores. The district court did not abuse its discretion in denying fees.[16]

The judgment of the district court is REVERSED and REMANDED with instructions to enjoin Discount from any use of the word Safeway.[17]

---

**14.** Since we hold that Discount should be enjoined from any use of the word Safeway, we need not consider the validity of the district court's injunction limiting Discount only to certain uses of the word.

**15.** Discount did not seek attorneys' fees under Florida law, which would permit an award only if a statute or agreement so provided. *Rivera v. Deauville Hotel Employees Serv. Corp.*, 277 So.2d 265, 266 (Fla.1973). No statute or agreement appears to apply here.

**16.** Since Discount is not the prevailing party on appeal it would not, in any event, be entitled to fees.

**17.** Safeway Stores sought damages as well as an injunction in its original complaint. On appeal, however, it seeks only an injunction.