523 So.2d 1158 (1988)
TIO PEPE, INC., Appellant,
v.
EL TIO PEPE de MIAMI RESTAURANT, INC., and Cantabrica, Inc., Appellees.
No. 87-952.
District Court of Appeal of Florida, Third District.
January 19, 1988.
Rehearing Denied May 18, 1988.
Kozyak, Tropin & Throckmorton and Harley S. Tropin and Joel L. Tabas; Frijouf, Rust & Pyle, Tampa, for appellant.
Malin, Haley & McHale and Eugene F. Malin and Edward F. McHale, Ft. Lauderdale, for appellees.
Before HENDRY, HUBBART and FERGUSON, JJ.
HENDRY, Judge.
Tio Pepe, Inc. appeals from a final judgment entered in favor of El Tio Pepe de Miami Restaurant, Inc. For reasons more fully developed below, we reverse.
Tio Pepe, Inc. is a highly acclaimed Spanish restaurant operating in Clearwater, Florida since 1976. In 1984, Tio Pepe, Inc. learned of another Spanish restaurant planning to open in Miami, doing business under the same name. Shortly thereafter, Tio Pepe, Inc. registered the name "Tio Pepe" with the secretary of state as a service mark for restaurant services.[1] In addition, Tio Pepe, Inc. contacted the owners of the Miami restaurant, asking them to choose another name for their business. The Miami restaurant owners claim they had never heard of the Clearwater restaurant when the name was selected; rather, they chose the name Tio Pepe for the Miami *1159 restaurant after obtaining permission from the owners of Tio Pepe sherry. The Miami restaurant proceeded to open in September, 1985, under the slightly altered name "El Tio Pepe de Miami."[2] That same month, Tio Pepe, Inc. filed suit against El Tio Pepe de Miami for statutory and common law trade mark infringement, unfair competition, and dilution of their service mark.
The trial court, sitting without a jury, denied Tio Pepe, Inc.'s claims and entered a final judgment in favor of El Tio Pepe de Miami, concluding in part that:
Defendants' use of the mark "EL TIO PEPE DE MIAMI" for restaurant services in Dade County, Florida does not infringe the Plaintiff's mark "TIO PEPE" used in Plaintiff's restaurant in Clearwater, Florida.
The gist of a claim of service mark infringement is likelihood of confusion as to the source of the services in question. A key element in determining confusion is the degree, if any, of competition between the parties. It has been shown at the trial that there is no competition between the parties because of their substantial geographic separation. It is well settled that one business outside the market territory of another has a right to use the same name. Abner's Beef House Corp. v. Abner's International, Inc., 227 So.2d 865 (Fla. 1969)....
The trial judge correctly states that the gist of an infringement claim, under both the common law[3] and section 495.131, Florida Statutes (1985),[4] is likelihood of confusion. See Crown Cent. Petroleum v. Standard Oil Co., 135 So.2d 26, 30 (Fla. 1st DCA 1961) (quoting Webb's City, Inc. v. Bell Bakeries, 226 F.2d 700 (5th Cir.1955)); cf. California Club Realty, Inc. v. Country Club Realty of S. Fla., Inc., 493 So.2d 37 (Fla. 3d DCA 1986). "[L]ikelihood of confusion is a question of fact and in arriving at a conclusion all relevant factors should be considered in an overall perspective." American Bank of Merritt Island, 455 So.2d at 447 (Fla. 5th DCA 1984) (emphasis added) (quoting 74 Am.Jur.2d 780, Trademarks and Tradenames § 119).
Tio Pepe, Inc. contends the trial court failed to address other relevant factors, besides degree of competition, in finding no likelihood of confusion existed. We agree.
Federal cases examining infringement claims under both the Lanham Act, 15 U.S.C.A. §§ 1051-1127,[5] and Florida's statutory law[6] and common law have formulated a *1160 list of factors which bear upon the issue of likelihood of confusion. These factors include: 1) the type of trademark; 2) the similarity of the two marks, 3) similarities of the products or service, 3) the similarities of retail outlets or purchasers; 4) the similarities of advertising media used; 5) the defendant's intent; and 6) evidence of actual confusion. Safeway Stores, Inc. v. Safeway Discount Drugs, Inc., 675 F.2d 1160 (11th Cir.1982); Chassis Master Corp. v. Borrego, 610 F. Supp. 473 (S.D.Fla. 1985); Broadcasting Publications, Inc. v. Burnup & Sims, Inc., 582 F. Supp. 309 (S.D.Fla. 1983). See California Club Realty, 493 So.2d at 38.
In examining these factors in an overall perspective, evidence of actual confusion is of foremost importance in that it is regarded as the best evidence of likelihood of confusion. American Bank, 455 So.2d at 447. See Safeway Stores, 675 F.2d at 1167-68 (discusses the significance of actual confusion). In the instant case, Tio Pepe, Inc. presented the testimony of three patrons of the Clearwater restaurant who believed Tio Pepe, Inc. also owned the Miami restaurant. "Although the number of instances is small, the people confused are precisely those whose confusion is most significant: ... customer[s], without whom the business would not exist." Safeway Stores, 675 F.2d at 1167. This evidence of actual customer confusion "is worthy of substantial weight." Id.
Furthermore, the decision under review gives no indication that the trial court considered any of the other remaining factors in concluding defendant's use of the "Tio Pepe" mark did not infringe plaintiff's prior use. Accordingly, this portion of the judgment is reversed.
The trial court also denied plaintiff's dilution claim because the parties "[were] engaged in offering identical services to the public in separate locations separated by a substantial geographical distance." This conclusion contains erroneous statements of the law, also warranting reversal.
Florida's anti-dilution statute, section 495.151, Florida Statutes (1985), protects a prior user of a mark against a subsequent user of the same or similar mark "if it appears to the court that there exists a likelihood of injury to business reputation or of dilution of the distinctive quality of the mark,... notwithstanding the absence of competition between the parties or of confusion as to the source of goods or services." (emphasis added). Under the statute, the common law requirements of establishing competition between the parties or confusion as to the source of the services have been eliminated, Abner's Beef House, 227 So.2d at 866; Marks v. Cayo Hueso, Ltd., 437 So.2d 775 (Fla. 3d DCA 1983), thus the need to inquire into the territorial scope of the businesses to determine whether competition or confusion is present has also been dispensed with. Safeway Stores, 675 F.2d at 1167-68. Compare Junior Food Stores of W. Fla., Inc. v. Jr. Food Stores, Inc., 226 So.2d 393, 396-98 (Fla. 1969). A prior user has a claim for dilution "where the use of the [service mark] by the subsequent user will lessen the uniqueness of the prior user's mark with the possible result that a strong mark may become a weak mark." Chassis Master, 610 F. Supp. at 479 (quoting Holiday Inns, Inc. v. Holiday Out In America, 481 F.2d 445, 450 (5th Cir.1973)). Although the doctrine of dilution has been held to be most applicable to circumstances where the subsequent user appropriates the mark for a product dissimilar from that used by the prior user, Community Fed. Sav. & Loan Ass'n v. Orondorff, 678 F.2d 1034 (11th Cir.1982) (anti-dilution statute provided relief to a savings and loan association, the prior user of the service mark "Cookie Jar," enjoining subsequent use of *1161 the mark by a topless go-go bar), section 495.151 has also been invoked where the prior and subsequent users provided identical services, Chassis Master, 610 F. Supp. at 479 (subsequent user's mark "Mister Chassis" for automotive repair services diluted prior user's mark "Chassis Master" for identical service).
The trial court, rather than focusing its inquiry upon the type of services the parties provided and the territorial scope of the services, should have evaluated the evidence to determine whether the mark "Tio Pepe" is weak or strong, and if strong, whether defendant's use of the mark "dilutes the value and uniqueness" of plaintiff's mark, rendering it weak. Holiday Inns, 481 F.2d at 450; Chassis Master, 610 F. Supp. at 479.
Accordingly, the final judgment appealed from is reversed and the cause remanded for further proceedings consistent with this opinion.
Reversed and remanded.
NOTES
[1] § 495.061, Fla. Stat. (1985).
[2] The Tio Pepe of Miami.
[3] The elements which a plaintiff must allege for a common law cause of action for service mark infringement are set forth in American Bank of Merritt Island v. First American Bank & Trust, 455 So.2d 443, 445-46 (Fla. 5th DCA), review denied, 461 So.2d 114 (Fla. 1984). See also 74 Am.Jur.2d 780, Trademarks and Tradenames § 16 (1974).
[4] Section 495.131 provides in relevant part:

Subject to the provisions of s. 495.161 [recognizing common law rights], any person who shall:
(1) Use, without the consent of the registrant, any reproduction, counterfeit, copy, or colorable imitation of a mark registered under this chapter on any goods or in connection with the sale, offering for sale, distribution or advertising of any goods or services on or in connection with which such use is likely to cause confusion or mistake or to deceive as to the source or origin of such goods or services; .. .
Shall be liable in a civil action by the owner of such registered mark for any or all of the remedies provided in s. 495.141... .
[5] The language contained in the infringement section of the Lanham Act, 15 U.S.C.A. § 1114(1), is very similar to that found in the Florida statute, section 495.131. The federal act states:

Any person who shall, without the consent of the registrant,
(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive;... shall be liable in a civil action by the registrant for the remedies hereinafter provided.
[6] Only a handful of Florida cases have had opportunity to address Florida's infringement statute, § 495.131, see Abner's Beef House, 227 So.2d 865; Sepmeier v. Tallahassee Democrat, Inc., 461 So.2d 193 (Fla. 1st DCA 1984); California Club Realty, 493 So.2d 37; American Bank, 455 So.2d 443, and these cases provide limited insight in construing § 495.131. Thus, inasmuch as the language contained in the Florida statute is so similar to its federal counterpart, the construction given the federal act should be examined as persuasive authority for interpreting the state act. See 13 Fla.Jur.2d, Courts and Judges § 160 (1979) (federal decisions are regarded as persuasive authority where they construe a federal statute which is almost identical to the provision under consideration by the state court); cf. Brown v. Brown, 432 So.2d 704 (Fla. 3d DCA 1983) (decision construing a Federal Rule of Civil Procedure which uses almost identical language to that found in the Florida counterpart provides persuasive authority for interpreting the state rule).