**CHASSIS MASTER CORP. and Dade Chassis Master Corp., Plaintiffs,**

**v.**

**Nelson BORREGO and Mister Chassis, Inc., Defendants.**

**No. 84–1720–CIV–SPELLMAN.**

United States District Court, S.D. Florida, Miami Division.

April 1, 1985.

Harley S. Tropin, Miami, Fla., for plaintiffs.

James E. Wetterling, Miami, Fla., for defendants.

## MEMORANDUM OPINION, FINDINGS OF FACT AND CONCLUSIONS OF LAW

SPELLMAN, District Judge.

This is an action for trademark infringement, trademark dilution, and for unfair competition. Plaintiffs' claims arise out of defendants' alleged unauthorized adoption of the name "Mister Chassis", which the plaintiffs allege is confusingly similar to their federally registered trademark, CHASSIS MASTER PRECISION GUARANTEED, and their common law trademark, CHASSIS MASTER. The Court held a non-jury trial on the issue of plaintiffs' entitlement to preliminary and permanent injunctive relief. This Memorandum Opinion comprises the Court's Findings of Fact and Conclusions of Law.

### I.

The plaintiffs, Chassis Master Corp. and Dade Chassis Master ("Chassis Master")

are Florida corporations engaged in specialized automotive repair services. These services include the correction of tire wear problems, suspension and steering problems and front end alignment.

Chassis Master Corp. owns the following federally registered trademark: CHASSIS MASTER PRECISION GUARANTEED. This trademark was registered in the U.S. Patent and Trademark Office on October 6, 1981, under Registration Number 1,172,-576, for automotive repair services. The plaintiffs have also used an abbreviation of their federally registered trademark, CHASSIS MASTER, and thus enjoy both federal and commonlaw trademark protection for the trademark CHASSIS MASTER. CHASSIS MASTER AND CHASSIS MASTER PRECISION GUARANTEED are hereinafter referred to as the Marks.

The plaintiffs have used the Marks to describe the services offered and, since 1978, have expended over one million dollars in advertising and promotion of their services under the Marks. They market their services by radio advertising, the distribution of a newspaper "Auto News", and through solicitation of customers from the "trade" such as gas stations, tire stores, and body shops. In addition, they distribute brochures, leaflets and flyers. All of the plaintiffs' advertising heavily features the CHASSIS MASTER Marks.

The defendant, Nelson Borrego ("Borrego"), was formerly the service manager of the Chassis Master located in Dade County. Nine days after he was fired from this position, he formed a corporation called "Mister Chassis." Mister Chassis is located only a few miles from the Dade County Chassis Master and offers almost identical services.

In May of 1984, two months after Mister Chassis started selling to the public, counsel for Chassis Master sent demand letters to Borrego requesting him to immediately stop using the Mister Chassis name because it was confusingly similar to Chassis Master, and to change his brochures which plaintiffs claim were pirated from their own. Borrego did not respond to the demand letters sent to him and refused to stop using the Mister Chassis name or to change the brochures. This lawsuit ensued.

## II.

In order to prevail on the trademark infringement claim, the plaintiffs must prove ownership of the CHASSIS MASTER and CHASSIS MASTER PRECISION GUARANTEED Marks and that the defendants' use of "Mister Chassis" is likely to cause confusion or mistake among the public. *See Chemical Corp. of America v. Anheuser-Busch, Inc.*, 306 F.2d 433 (5th Cir.1962), *cert. denied*, 372 U.S. 965, 83 S.Ct. 1089, 10 L.Ed.2d 129 (1963). There is no dispute that the Marks belong to Chassis Master and its related companies, and the Court, therefore, finds that the plaintiffs are the owners of the Marks.

The primary issue which must be proven, then, is that there is a likelihood of confusion, mistake or deception in Borrego's use of the "Mister Chassis" name for his auto repair business. *Id.* This is true both under rulings of the federal courts under 15 U.S.C. § 1114(1) and 15 U.S.C. § 1125(a) and under the decisions of state courts.

There are many factors which bear upon the question of whether a sufficient likelihood of confusion has been shown in a trademark case. Among the factors to be considered are: (a) the type of trademark; (b) the similarity of the two marks, (c) the similarities of the product, (d) the similarity of retail outlets and purchasers, (e) the similarity of advertising media used, (f) the defendants' intent, and (g) evidence of actual confusion. *John J. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 972 (11th Cir.1983). *See also, Roto-Rooter Corporation v. O'Neal*, 513 F.2d 44 (5th Cir.1975). In addition, the Court should consider previous contractual and business relations between the parties. *Sun-Fun Products v. Suntan Research & Development, Inc.*, 656 F.2d 186, 189 (5th Cir. Unit B 1981). When these factors are weighed in the present case, it is abundant-

ly clear that the defendants' use of the name Mister Chassis is likely to cause confusion.

■ *Type of Trademark:* The scope of protection to be accorded to a registered mark depends upon the "strength" and distinctiveness of that mark. *Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d 252, 259 (5th Cir.), *cert. denied,* 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980). "A strong trademark is one that is rarely used by parties other than the owner of the trademark" and is thus closely associated with the owner of the mark. *Exxon Corp. v. Texas Motor Exchange of Houston, Inc.,* 628 F.2d 500, 504 (5th Cir.1980).

Webster's Third New International Dictionary defines "chassis" as:

2a: the frame upon which is mounted the body (as of an automobile or airplane). . . .

b: the frame and working parts as opposed to the body (as of an automobile).

Webster's Third New International Dictionary defines "master" as:

c: being a person notably or supremely proficient in something; consummately accomplished or skilled.

In the present case, the term "chassis" as used in connection with the services offered by the parties is generic in that it conveys information about the nature of the service provided. Similarly, the term "master" is a descriptive or weak term.

Nonetheless, even a relatively weak mark is entitled to some protection, especially since, as a result of extensive advertising, the Chassis Master Marks have acquired and now enjoy a certain distinctiveness that is closely associated with the plaintiffs. Moreover, there are no competitors using the Marks in anything similar to the plaintiffs' format, except for defendants' recently adopted "Mister Chassis."

*Similarity of Marks:* The terms "Chassis Master" and "Mister Chassis" are obviously very similar in appearance, pronunciation, and suggestion, the criteria adopted by the courts in determining similarity.

*See, e.g., Helene Curtis Industries, Inc. v. Church & Dwight Co.,* 560 F.2d 1325 (7th Cir.1977), *cert. denied,* 434 U.S. 1070, 98 S.Ct. 1252, 55 L.Ed.2d 772 (1978) ("Arm & Hammer" infringed by "Arm in Arm"); *Clairol, Inc. v. Roux Laboratories, Inc.,* 442 F.2d 980, 58 CCPA 1170 (1971) ("Platinum Puff" infringed by "Platinum Plus"); *Century 21 Real Estate v. Century Resorts International, Inc.,* 211 U.S.P.Q. 227, 231 (N.D.Ill.1981) ("Century Resorts International" found confusingly similar to "Century 21" and "likelihood of confusion is increased by the fact that both parties sell the same services to identical consumers"); *Cyclonaire Corp. v. United States Systems, Inc.,* 209 U.S.P.Q. 310 (D.Kan. 1980) ("Cyclonaire" infringed by "Cycle Matric"); *Purolator, Inc. v. Efra Distributors, Inc.,* 524 F.Supp. 471 (D.P.R.1981), *aff'd,* 687 F.2d 554 (1st Cir.1982) ("Puro filter" infringes upon "Purolator"); *Burger Chef Systems, Inc. v. Burger Man, Inc.,* 492 F.2d 1398 (Cust. & Pat.App.1974) ("Burger Man" infringes "Burger Chef"); *Mem Company, Inc. v. Hes Company, Inc.,* 149 U.S.P.Q. 8 (S.D.Cal.1966) ("London Leather" infringes "English Leather"); *Masterpiece of Pennsylvania, Inc. v. Consolidated Novelty Co.,* 368 F.Supp. 550 (S.D.N.Y.1973) ("Alpine King" infringes "Mountain King").

Moreover, there was evidence presented that Spanish speaking customers in Miami regularly refer to CHASSIS MASTER as "Master Chassis." Thus, by merely changing one letter of a word Borrego was able to capitalize on the Chassis Master name and reputation. *See Arthur Matney Co., Inc. v. Halcyon Essences Ltd.,* 207 U.S.P.Q. 77, 79 (E.D.N.Y.1979) ("Selene" confusingly similar to "Serena" . . . to the Spanish-speaking customers").

Finally, the manner in which the parties display the Marks on their signs and literature are also confusingly similar in that both use an abstract configuration representing a chassis.

*Similarity of Services:* The services provided by the parties are virtually identical. Both are engaged in the specialized auto-

motive repair services of chassis repair including the correction of tire wear problems; suspension and steering problems and front end alignment. Moreover, there was testimony that the services provided are somewhat unique in that both Chassis Master and Mister Chassis specialize in the new "uni-body" automobiles. In this circuit, the rule is that "the greater the similarity between the products and the services, the greater the likelihood of confusion." *John H. Harland v. Clarke Checks, Inc.,* 711 F.2d at 976.

■ *Similarity of Customers:* The parties direct their services towards the same customers. Both appeal to the trade and the general public and both have attempted to appeal to Latin customers. They sell their services in the same geographic area. The former fifth circuit has said that "dissimilarities between retail outlets for and the predominant consumers of the plaintiff's and defendant's goods lessen the possibility of confusion, mistake, or deception." *Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d 252, 262 (5th Cir.), *cert. denied,* 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980). Obviously, the converse holds true—the greater the similarity between consumers, the greater the likelihood of confusion.

*Similarity of Advertising Media Used:* The defendants have adopted the same marketing techniques as Chassis Master. Indeed, the defendant hired a former sales representative from Chassis Master to solicit business from the "trade."

*Defendant's Intent:* The intent of the defendant in adopting the Mister Chassis mark is a factor, since, if the mark was adopted with the intent of deriving benefit from the reputation of Chassis Master or Chassis Master Precision Guaranteed, an inference may be drawn that there is confusing similarity. *Restatement of Torts,* § 729, comment f (1938). According to the former fifth circuit if

a plaintiff can show that a defendant adopted a mark with the intent of deriving benefit from the reputation of the plaintiff, that fact alone 'may be suffi-

cient to justify the inference that there is a confusing similarity.'

*Exxon Corporation v. Texas Motor Exchange of Houston, Inc.,* 628 F.2d 500, 506 (5th Cir.1980) (citation omitted). *See* J. McCarthy, *Trademark and Unfair Competition,* (2d Ed.1984) § 23.32 ("If there is proof of defendant's intent and purpose to trade on another's goodwill by use of a similar mark, then the Court will follow the alleged infringer's judgment and find a likelihood of confusion"). Moreover, recent cases have found that even when the defendant was only intending to copy a trademark as much as the law would allow, this must be considered as an intent to "cash in" on the plaintiff's good will. *See John H. Harland,* 711 F.2d at 977–978; *Sicilia Di R. Biebow & Co. v. Ronald Cox,* 732 F.2d 417 (5th Cir.1984). The court in *Sicilia* explicitly rejected a narrow definition of bad intent. Rather, it found that the proper focus of inquiry is "whether defendant had the intent to derive benefit from the reputation or goodwill of the plaintiff." *Id.* at 431 (citations omitted). This Court finds that Borrego unquestionably had such an intent.

Borrego testified that he never entertained thoughts of opening his own business until plaintiffs fired him and he was unable to find another job. The evidence in this case demonstrates that this claim is patently false. Borrego obviously planned to open his own business well before he was fired.

First of all, other Chassis Master employees testified that shortly after Borrego came to work at Chassis Master he began to solicit them to join him in a new business. Moreover, Borrego's own story as to how he opened his own business is filled with contradictions. He was fired from Chassis Master on December 20, 1983. At trial, he claimed that he was too depressed before Christmas to look for a job or to do anything. "I then * * * decided to myself to wait until Christmas and New Years was over." He also claimed that he looked for another job for three or four weeks before he decided to open his own business. But

he testified that sometime before Christmas Eve he had discussed possible names for the new business with his wife. And it is undisputed that on December 28, 1983 he put a deposit down and signed a lease for the new business and the following day he incorporated under the name of Mister Chassis. Thus, notwithstanding Borrego's claims that he decided to open his own business only after his job hunting efforts were unsuccessful, it took only nine days after he was fired from Chassis Master to set up Mister Chassis. And these nine days included the Christmas holiday.

Borrego also testified that he decided on the name "Mister Chassis" after it was suggested to him by a friend who owned a barber shop called "Mister Hair" and that he did not intend to derive any benefit from the Chassis Master name. But this Court has no doubt that Borrego's intent in adopting the name "Mister Chassis" was to cash in on the plaintiffs' reputation. Several Chassis Master employees testified that Borrego knew of and had commented upon the tendency of Spanish-speaking people to refer to "Chassis Master" as "Master Chassis" before he adopted the "Mister Chassis" name. He therefore was able to capitalize on the Chassis Master name by simply changing one letter.[1]

Borrego's wrongful intent is clearly evident in other areas as well. Borrego imitated the Chassis Master brochure and rate card. The "Certification and Guarantee" that Borrego gives customers after their cars are repaired by Mister Chassis is almost a wholesale copy of the "Certification and Guarantee" that Chassis Master provides. Borrego also adopted Chassis Master's marketing techniques. In fact, Borrego hired a former Chassis Master marketing representative to visit the trade to encourage referrals.

*Defendant's Duty as a Second User:* A sub-category of intent is the previous relationsnip of the parties. "A party with a prior relationship with the first mark has a greater duty to adopt a clearly distinguishable mark than does a mere stranger." *Cyclonaire Corp. v. United States Systems, Inc.,* 209 U.S.P.Q. 310, 314 (D.Kan. 1980). *See also Sicilia,* 732 F.2d at 432 ("We think that Cox's prior role as a distributor of Sicilia's citrus juice provides additional evidence of his intent to trade on the goodwill of Sicilia"). Here, Borrego clearly knew of the Chassis Master trademark and breached his duty to avoid confusion. Indeed, the Court finds that Borrego intended to adopt a name and marketing techniques that were confusingly similar to those of Chassis Master.

*Evidence of Actual Confusion:* "Although evidence of actual confusion is not necessary to a finding of likelihood of confusion, it is nevertheless the best evidence of likelihood of confusion." *Amster,* 615 F.2d at 263. The Court finds that although the evidence of actual confusion has been somewhat exaggerated by Chassis Master's employees, there has been some actual confusion by the public.

### III.

Based on the factors discussed above, the Court concludes that there is a likelihood that the defendants' use of the name Mister Chassis is likely to cause confusion or mistake among the public. The defendants are therefore guilty of trademark infringement under both Section 1114(1) and Section 1125(a).

---

1. In evaluating the credibility of Mr. Borrego's testimony, this Court is reminded of the tailor who, in attempting to justify the exaggerated price for a sportcoat, explained to his anxious customer: "I must, of course, go to a great deal of difficulty in assembling such a fine coat. I must travel to Hawick, Scotland to purchase the cashmere, to a small outdoor market I know of in Tibet for the China silk lining, to Turin, Italy for the buttons, and then to Sydney, Australia to acquire the special thread I must use. A magnificent garment, such as the one you request," assured the tailor, "requires a lot of work."

The customer appreciated the Herculean efforts the tailor would soon undertake on his behalf and agreed to purchase the sportcoat. The customer took out his calendar and asked when his magnificent coat could be completed.

The tailor smiled and responded immediately: "Would noon tomorrow be too late?"

■ For most of the same reasons described above and the findings of fact, defendants are also guilty of common law unfair competition. *See Professional Golfer's Association of America v. Banker's Life & Casualty Co.*, 514 F.2d 665 (5th Cir.1975). Unfair competition includes likelihood of customer confusion and passing off, and also acts as an "umbrella for all statutory and non-statutory causes of action arising out of business conduct which is contrary to honest practices in industrial or commercial matters." *American Heritage Life Insurance Co. v. Heritage Life Insurance Co.*, 494 F.2d 3, 14 (5th Cir. 1974).

■ The fact that the defendants copied the plaintiffs' brochures and guarantees as well as adopting a confusingly similar name leads this Court to find that the defendants are guilty of unfair competition.

■ Florida's Anti-Dilution Statute protects against "dilution of the distinctive quality of the trademark ... notwithstanding the absence of competition between the parties or of confusion as to source of goods or services." *Fla. Code Ann.*, § 495.151. Dilution occurs "where the use of the trademark by the subsequent user will lessen the uniqueness of the prior user's mark with the possible result that a strong mark may become a weak mark." *Holiday Inns, Inc. v. Holiday Out In America*, 481 F.2d 445, 450 (5th Cir.1973). Because the defendants' use of "Mister Chassis" dilutes the value and uniqueness of plaintiffs' "Chassis Master" mark, defendants are also guilty of trademark dilution in violation of Section 495.151, Florida Statutes. *Community Federal Savings and Loan Association v. Orondorff*, 678 F.2d 1034 (11th Cir.1982).

Defendants are hereby found jointly and severally liable for trademark infringement, trademark dilution and unfair competition. The amount of damages shall be determined by the Court at a subsequent hearing.

Accordingly, it is ORDERED AND ADJUDGED that:

(1) The defendants, and all agents, servants, employees and representatives, and all persons, entities or corporations in active concert or participation with or acting under the direct or indirect control or authority of defendants, are hereby enjoined during the pendency of this action and permanently thereafter from directly or indirectly infringing the Marks in any manner and from engaging in unfair trade practices and unfair competition in any manner against the plaintiffs by means of any activities, including but not limited to using "MISTER CHASSIS" or any other confusingly similar name as defendants' corporate name, or from promoting, offering for sale, or selling (i) any automotive repair services under the name "MISTER CHASSIS" or any other name confusingly similar to the Marks hereinabove specified, and (ii) distributing any advertising or promotional material bearing a confusing similarity to the Marks.

(2) Pursuant to Section 36 of the Lanham Trademark Act of 1946, 15 U.S.C. § 1118, defendants shall be required to either deliver up for destruction all documents, signs, or other material in their possession under their control bearing the name "MISTER CHASSIS" together with all related promotional and advertising materials, or (ii) defendants may, alternatively, obliterate the name "MISTER CHASSIS" from said documents, signs, or other materials, provided that such obliteration takes place within fifteen (15) days from the date hereof.

(3) Defendants shall immediately cease using their confusingly similar rate cards and guarantee.

(4) Defendants shall be required to file with this Court and serve on plaintiffs' counsel within fifteen (15) days of these Findings of Facts and Conclusions of Law an affidavit, in writing and under oath, setting forth in detail the manner and form in which the defendants have complied with this Order.