**DELTONA TRANSFORMER CORPO-RATION, a Florida corporation, d/b/a Deltran, Plaintiff,**

v.

**WAL–MART STORES, INC., a Delaware corporation registered to do business in Florida, Defendant.**

**No. 6:99CV–1231–ORL22C.**

United States District Court,
M.D. Florida,
Orlando Division.

Jan. 11, 2000.

Edward Michael Livingston, Edward M. Livingston, P.A., Winter Park, FL, for plaintiff.

Barbara L. Waite, William D. Coston, Venable, Baetjer, Howard & Civiletti, Washington, DC, Vincent M. D'Assaro, Hunter A. Hall, D'Assaro and Hall, P.A., Orlando, FL, for defendant.

### ORDER

CONWAY, District Judge.

This cause is before the Court for consideration of Magistrate Judge James G. Glazebrook's Report and Recommendation (Doc. 27), dated December 8, 1999, and Plaintiff's timely objections (Doc. 28) thereto. Plaintiff, Delta Transformer Corporation d/b/a Deltran ("Deltran"), seeks preliminarily to enjoin Defendant, Wal–Mart Stores, Inc. ("Wal–Mart"), from using the mark "BATTERY TENDER" because, Deltran alleges, the use of the mark constitutes trademark infringement. In his Report and Recommendation, Judge Glazebrook recommends that this Court deny Plaintiff's Motion for Preliminary Injunction (Doc. 2.), filed September 28, 1999. The Court now reviews *de novo* those portions of Judge Glazebrook's Report and Recommendation to which Plaintiff objects.[1]

■ The standard for obtaining preliminary injunctive relief merits repeating in light of the Plaintiff's objections to Judge Glazebrook's report. A party seeking such relief must demonstrate: 1) a substantial likelihood of success on the merits; 2) that irreparable harm will result absent the issuance of an injunction; 3) that the threatened injury to the movant outweighs any damage the proposed injunction may cause the opposing party; and 4) that an injunction would not be adverse to the public interest. *See McDonald's Corp. v.*

*Robertson,* 147 F.3d 1301, 1306 (11th Cir. 1998).

After carefully considering the arguments and evidence presented by Deltran and Wal–Mart, Judge Glazebrook determined that, *for purposes of the motion for preliminary injunction,* Deltran failed to present sufficient evidence to establish that it will likely prevail on its trademark infringement claim. *Report and Recommendation* at 1368, 1369–1370.[2] While Deltran disagrees with Judge Glazebrook's analysis of the merits of its trademark claim, Deltran does not take issue with the magistrate's ultimate finding that Deltran failed to demonstrate entitlement to preliminary injunctive relief. Rather, Deltran argues that "once the evidence is fully developed and ultimately submitted to a jury as trier of fact," Deltran will ultimately prevail. In effect, Deltran concedes that, based on the evidence presented thus far, preliminary injunctive relief is not warranted. Indeed, Deltran admits that it had insufficient time to marshal the necessary evidence in aid of its claim at this early stage. Deltran's promise to submit more evidence at trial is irrelevant to whether this Court now should intercede and take the extraordinary and drastic remedy of issuing a preliminary injunction. Judge Glazebrook's finding that Deltran failed to demonstrate the four prerequisites for preliminary injunctive relief is without error. Accordingly, Deltran's request for a preliminary injunction is due to be denied.

Based on the foregoing, it is ORDERED as follows:

1. The Plaintiff's Objection to Report and Recommendation of the U.S. Magis-

---

**1.** *See* 28 U.S.C. 636(b)(1), which provides, in relevant part:

Within ten days after being served with a copy, any party may serve and file written objections to [a magistrate's] proposed findings and recommendations as provided by rules of court. A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which ob-

jection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.

*Id.*

**2.** In addition, Judge Glazebrook determined that Deltran failed to establish a substantial threat of irreparable injury if an injunction does not issue. *Id.* at 1370. Deltran does not object to this finding.

trate Judge (Doc. 28), filed December 17, 1999, is OVERRULED.

2. Judge Glazebrook's December 8, 1999 Report and Recommendation (Doc. 27) is APPROVED and ADOPTED in full.

3. Plaintiff's Motion for Preliminary Injunction(Doc. 2.), filed September 28, 1999, is DENIED.

## REPORT AND RECOMMENDATION

GLAZEBROOK, United States Magistrate Judge.

This cause came on for hearing on November 3, 1999 on the following motion:

| MOTION: | PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION [Docket No. 2] |
| --- | --- |
| FILED: | September 28, 1999 |
| RECOMMENDATION: DENIED. | |

### I. *INTRODUCTION*

In its motion for preliminary injunction, plaintiff Deltona Transformer Corporation d/b/a Deltran ("Deltran") seeks to enjoin defendant Wal–Mart Stores, Inc., ("Wal–Mart") from using the mark "BATTERY TENDER" on the ground that the use of this mark amounts to trademark infringement, false designation, trademark dilution, and unfair and deceptive trade practice. After carefully considering Deltran's initial motion and memorandum of law [Docket Nos. 2, 3], Wal–Mart's opposition [Docket No. 11], Deltran's reply [Docket No. 14], and the argument of counsel at the November 3, 1999 hearing, the undersigned recommends that plaintiff's motion be **DENIED** for the reasons set forth below.

### II. *BACKGROUND*

Deltran has been engaged in the manufacture and sale of battery chargers for more than ten years. In connection with this product, Deltran began to use the trademark "BATTERY TENDER" on December 1991. On April 18, 1995, Deltran registered its "BATTERY TENDER" trademark under the Federal Trademark Act of 1946 (the "Lanham Act"). *See* Docket No. 2, Exhibit A to Plaintiff's Mo-

tion for Temporary Restraining Order. The registration indicates that the mark is to be used for "battery charger[s] for use in marine industry, motorcycles, and automotive or, in any vehicle or application using lead acid or gel batteries." *Id.* No claim was made to the exclusive right to use "Battery" apart from the mark "BATTERY TENDER."

Recently, Wal–Mart purchased 50,000 battery chargers from Power Pro, a Hong Kong Corporation. Each battery charger was made with a label and packaging that featured Wal–Mart's EverStar Trademark. The product (in conjunction with its EverStar mark) also featured the term "Battery Tender," as follows: "Wall–Mount Battery Tender." *See* Docket No. 1, Exhibit E to the Complaint. The 50,000 units have been shipped to the United States and are available for sale at one thousand (1,000) Wal–Mart stores. Wal–Mart has not done any external advertising for the Wal–Mart EverStart battery charger product.

Upon becoming aware that Wal–Mart was marketing a lower price battery charger that used the mark "Battery Tender," Deltran filed this suit on September 28, 1999. On that same date, Deltran filed a motion for temporary restraining order. Docket No. 2. The Honorable Judge Anne C. Conway denied Deltran's motion, insofar as it sought a temporary restraining order, and reserved ruling, pending a hearing, on the preliminary injunction order. Docket No. 5. A preliminary injunction hearing was held before the undersigned on November 3, 1999.

### III. *PRELIMINARY INJUNCTION STANDARD*

A plaintiff seeking a temporary restraining order or preliminary injunction must show: (1) a substantial likelihood that it will ultimately prevail on the merits; (2) that it will suffer irreparable injury unless the injunction issues; (3) that the threatened injury to the plaintiff outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that the injunction, if issued, would not be

adverse to the public interest. *Zardui–Quintana v. Richard,* 768 F.2d 1213, 1216 (11th Cir.1985) (citation omitted). Moreover, "[t]he preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant 'clearly carries the burden of persuasion' as to the four prerequisites." *Id.* (quoting *United States v. Jefferson County,* 720 F.2d 1511, 1519 (11th Cir.1983)). Deltran has failed to establish a likelihood of success on the merits of its trademark claims, and it also has failed to show that it will suffer irreparable injury unless the injunction issues.

## IV. *LIKELIHOOD OF SUCCESS ON THE MERITS*

The key issue in determining whether a preliminary injunction should issue on an infringement claim is whether a plaintiff is substantially likely to prevail on the merits. Congress has provided for the registration and protection of trademarks. 15 U.S.C. §§ 1052–53. The United States Code permits the registration of a trademark that has become distinctive. 15 U.S.C. § 1052(f). A certificate of registration acts as prima facie evidence of the mark's validity and of the registrant's exclusive right to use the trademark mark. 15 U.S.C. §§ 1057, 1115(a). Registration of the mark, therefore, provides the plaintiff with a presumption that the mark is "not merely descriptive or generic, or, if merely descriptive, is accorded secondary meaning. This presumption may, of course, be overcome by proof of descriptiveness, or by proof of genericness." *Liquid Controls Corp. v. Liquid Control Corp.,* 802 F.2d 934, 935 (7th Cir.1986) (citations omitted). In other words, registration does not preclude another person from proving a defense or defect that he might have asserted if the mark had not been registered. 15 U.S.C. § 1115(a). For example, a trademark may be refused registration if it is "merely descriptive." *See* 15 U.S.C. § 1052(e)(1). Any person who uses a registered trademark without authorization may be liable to the registrant in a civil action for injunctive relief. 15 U.S.C. §§ 1114, 1116.

■ To prevail on a trademark infringement claim, a plaintiff must show that: (a.) it has a mark distinctive enough to deserve protection under the Lanham Act; and (b.) defendant's use of it is likely to cause confusion. *Freedom Sav. and Loan Ass'n v. Way,* 757 F.2d 1176 n. 1, 1179 (11th Cir.1985); *Investacorp, Inc. v. Arabian Inv. Banking Corp.,* 931 F.2d 1519, 1522–23 (11th Cir.1991); *Ice Cold Auto Air of Clearwater, Inc. v. Cold Air & Accessories, Inc.,* 828 F.Supp. 925 (M.D.Fla.1993). Plaintiff has failed to make a showing of either requirement.

### A. Distinctiveness Of A Mark

#### 1. *Applicable Law*

■ The level of protection afforded a mark is proportionate to the level of distinctiveness—the more distinctive the mark, the greater the level of protection. *Ice Cold Auto Air,* 828 F.Supp. at 931–34. There are four categories of distinctiveness in which a mark may be classified. In ascending order of distinctiveness, these categories are (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful. *Id.* at 930–31.

A generic mark suggests the basic nature of the good or overall class of service in question, rather than its source. *Investacorp.,* 931 F.2d at 1522 (stating that "Milk Delivery" is an example of a generic service mark). A generic term is typically incapable of achieving protection because it has no distinctiveness, notwithstanding registration. *Id.* Courts withhold trademark protection for such terms in order to avoid the creation of a monopoly in favor of the first provider of such goods or services. *Nassau v. Unimotorcyclists Society of America, Inc.,* 59 F.Supp.2d 1233, 1237 (M.D.Fla.1999) (citing *Ice Cold Auto Air,* 828 F.Supp. at 931).

■ A descriptive term identifies a characteristic, quality, or function of a product or service.[1] *Investacorp,* 931 F.2d

---

1. This Court has noted with approval that:

The distinction between generic and de-

at 1523–24 (finding "Investacorp" descriptive of a company that provides investment services and also stating that "BarnMilk" is an example of a descriptive mark); *Ice Cold Auto Air*, 828 F.Supp. at 933–34 (finding "Ice Cold Auto Air" descriptive of a company that provides auto air condition services). Although a descriptive term is not considered inherently distinctive, it may still be protectable if it has acquired secondary meaning.

■ Secondary meaning is the connection in the consumer's mind between the mark and the provider of the product or service. *Investacorp*, 931 F.2d at 1525. A high degree of proof is necessary to establish secondary meaning for a descriptive term which suggests the basic nature of the product or service. *Am. Television and Communications Corp. v. Am. Communications and Television, Inc.*, 810 F.2d 1546, 1549 (11th Cir.1987). A plaintiff may meet its burden by consumer survey evidence. *Investacorp.*, 931 F.2d at 1525. Absent survey evidence, the factors to consider in whether a mark has acquired secondary meaning are: (1) the length and manner of its use; (2) the nature and extent of advertising and promotion; (3) the efforts made by a plaintiff to promote a conscious connection in the public's mind between the mark and the plaintiff's product or service. *See Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1513 (11th Cir.1984) (addressing trade name infringement).

■ A suggestive term suggests the characteristics of the product and requires an effort of the imagination by the consumer in order to be understood as descriptive of the product. *Id.* Because a

suggestive product mark is inherently distinctive, no proof of secondary meaning is required for it to be protectable. *Id.* An arbitrary or fanciful term bears no relation to the product and, therefore, is inherently distinctive entitled to protection. *Id.*

### 2. Distinctiveness—The First Element of Trademark Infringement

■ In the instant case, Deltran claims that its "Battery Tender" trademark is protectable because it is suggestive, or at the very least, descriptive with a secondary meaning. Wal–Mart counters by arguing that Deltran's mark is not subject to protection because it is either generic or merely descriptive: it merely describes the basic nature of the product being offered, *i.e.*, a product that tends to a battery. *See* Docket No. 22, Wal–Mart's Opposition at 8. The Court finds that the "Battery Tender" mark is merely descriptive with no showing of a secondary meaning and, thus, is not entitled to protection.[2]

Deltran's registered "Battery Tender" mark is entitled to a presumption that it is not merely descriptive or generic—or if merely descriptive, that the mark has been accorded secondary meaning. However, Wal–Mart has overcome this presumption by proof of descriptiveness. Once Wal–Mart presented sufficient evidence to rebut the presumption, Deltran cannot simply rely on its registration to establish the existence of a protectable interest. Rather, the ultimate burden of proof is carried by Deltran. In this, Deltran has failed.

The dictionary definition of the term "Battery Tender" is an appropriate and relevant indication of the ordinary signifi-

---

scriptive marks is a matter of degree. "[A] generic term conveys information with respect to the nature or class of an article, whereas a descriptive term identifies the characteristics and qualities of the article, its color, odor, functions, dimensions or ingredients." [3 Callman, Unfair Competition Trademarks and Monopolies (3d ed.) ] § 70.4 "In a sense, a generic designation is the ultimate in descriptiveness." 1 McCarthy, Trademarks and Unfair Competition, § 12.5.

*Ice Cold Auto Air*, 828 F.Supp. at 933 (quoting *Imported Auto Parts Corp. v. R.B. Shaller & Sons, Inc.*, 258 N.W.2d 797, 800 (Minn. 1977)).

**2.** It is beyond doubt that the term "Battery Tender" bears a relationship to the type of product—battery charger—being offered by Deltran. Hence, it cannot be an arbitrary or fanciful term. *See, e.g., Investacorp*, 931 F.2d at 1520. Indeed, Deltran does not allege that its mark is arbitrary or fanciful.

cance and meaning of words to the public. Deltran has disclaimed protection for the term "battery." [3] The dictionary defines a "tender" as "a person who tends, or has charge of something." *Webster's New World Dictionary,* Third College Edition, p. 1378 (Simon & Schuster, Inc.1988). The term "tend" means "to take care of; minister to; watch over; look after; attend to." *Id.* The ordinary usage of the term, together with the evidence, does not support Deltran's claim that the term "Battery Tender" is suggestive. The term requires no effort of the consumer's imagination in order to be understood as descriptive of a battery charger. "Barn–Barn," an example of a suggestive term, is markedly less descriptive than the term "Battery Tender," which describes the product without suggestiveness.

The evidence demonstrates that the term "Battery Tender" describes the battery charger, or identifies a characteristic and quality of the battery charger. Like the descriptive term BarnMilk, the term "Battery Tender" conveys information that relates to the battery charger. It describes the item as something that tends to or cares for a battery. Indeed, the evidence borders on showing that the term is being used generically to describe the type of product, *i.e.,* a charger that tends batteries.

In reaching this conclusion, the Court considered that third parties, including the dealers licensed to sell Deltran's product under private label, use the term almost generically to describe the product for sale. *See* Docket No. 1, Exhibit C to Complaint. Indeed, the evidence demonstrates that at least one company selling Deltran's products under private label included a picture of Deltran's battery tender in its catalog with a text caption stating: "The AccuCharge Automatic battery charger/tender has the unique ability to not only charge a battery, but keep it at full charge, indefinitely, without boiling the electrolyte." *See* Docket No. 13, McKaig Decl., ¶ 5. Moreover, there is also evidence

of generic use by consumers. *See Id.* In addition, Harry Jordan, Wal–Mart's automotive buyer, explained in his declaration that those in the automotive business refer to the product as a battery tender because it automatically maintains batteries. *See* Docket No. 12, Jordan Decl., ¶ 2. Based on the evidence, this Court is satisfied that Wal–Mart has overcome the presumption of the mark's validity and has shown that Deltran's registered mark is merely descriptive with no secondary meaning.

Once Wal–Mart overcame the presumption of the mark's validity, the burden shifted back to Deltran to show a likelihood of success on the merits of proving that the trademark is either suggestive or descriptive with a secondary meaning. Deltran failed to satisfy its burden. Instead, Deltran's evidence consisted only of conclusory allegations and self-serving statements from the Vice President of Deltran, Michael L. Prelec and from a retail supplier of Deltran's "Battery Tender" battery chargers, Edward J. Sabatini. *See* Docket Nos. 15, 16. Mr. Sabatini stated that the descriptive term for Deltran's type of battery charger is "trickle charger" and not "Battery Tender." *See* Docket No. 15, Sabatini Decl., ¶ 4. Mr. Sabatini also stated that he and his customers associate the name "Battery Tender" with Deltran and that a consumer came into his store and confused Deltran's Battery Tender battery charger for that of Wal–Mart's. *See* Docket No. 15, Sabatini Decl., ¶¶ 2–3. Deltran's misplaced reliance upon this evidence is insufficient to meet the preliminary injunction standards.

At trial, Deltran may be able to prove that its mark is suggestive or descriptive with secondary meaning, but it has failed to do so for purposes of a preliminary injunction. As described above, a high degree of proof is necessary to establish secondary meaning for a descriptive term. *See Am. Television and Communications Corp. v. Am. Communications and Television, Inc.,* 810 F.2d 1546, 1549 (11th Cir.

---

**3.** Clearly, the term "battery" is generic and, hence, no one can monopolize that term.

1987). Deltran may meet its burden by consumer survey evidence showing that its mark has acquired secondary meaning. However, on the record before the Court, Deltran has not provided sufficient evidence of any conscious connection in the public's mind between its "Battery Tender" mark and Deltran's products. Consequently, Deltran has failed to show a substantial likelihood of success on its trademark infringement claim. Therefore, the motion for preliminary injunction should be **DENIED**.

## B. Likelihood Of Confusion—The Second Element Of Trademark Infringement

■ Assuming that Deltran's mark is subject to protection, Deltran is not entitled to a preliminary injunction. Deltran has failed to show a likelihood of confusion between the marks used by the two parties. *See, e.g., Freedom Sav. and Loan Ass'n,* 757 F.2d at 1179.

■ In the Eleventh Circuit, there are seven primary factors to consider in deciding whether there is a likelihood of confusion. The factors include: (1) the type of mark at issue; (2) similarity of mark; (3) similarity of products or services; (4) identity of purchasers and similarity of retail outlets; (5) similarity of advertising campaigns; (6) the defendant's intent; and (7) actual confusion. *Id.* at 1182–83. The type of mark and evidence of actual confusion are the most important factors. *Dieter v. B & H Indus. of Southwest Florida, Inc.,* 880 F.2d 322, 326 (11th Cir.1989). As demonstrated below, an analysis of all seven factors, does not support a finding of likelihood of confusion.

### 1. Type of Mark

In analyzing the type of mark, a court must determine whether the mark is strong or weak in order to determine the level of protection to be extended to the mark. *In Freedom Savings and Loan Association,* the Eleventh Circuit explained:

The more distinctive a plaintiff's service mark, the greater the likelihood that consumers will associate the registered mark and all similar marks with the registered owner. The law therefore provides the greatest protection to strong and distinctive service marks; the strength of a mark depends on the extent of third party usage and the relationship between the name and the service or good it describes.

757 F.2d at 1182. Extensive use by third parties suggests that there would be no likelihood of confusion between the plaintiff and the alleged infringer. *Sun Banks v. Sun Fed. Sav. and Loan Ass'n,* 651 F.2d 311, 316 (5th Cir.1981). In analyzing the relationship between the name and the service or good it describes, the Court considers the proper categorization of the mark. Suggestive and arbitrary marks are considered to be the most distinctive marks. As relatively strong marks, they are entitled to the strongest protection. Descriptive marks are much weaker, but may still be entitled to some protection. *Chassis Master Corp. v. Borrego,* 610 F.Supp. 473, 476 (S.D.Fla.1985). As previously discussed, the evidence thus far shows Deltran's mark to be merely descriptive and not entitled to protection.

### 2. Similarity of the Mark

Another factor increasing the likelihood of confusion is a high degree of similarity between the marks. In comparing the marks, a court should consider the overall impression created by the marks rather than a mere comparison of their individual features. *BellSouth Advertising & Publishing Corp. v. Real Color Pages,* 792 F.Supp. 775, 781 (M.D.Fla.1991). The analysis should include a comparison of the appearance, sound and meaning of the marks, as well as the manner in which they are displayed. *Id. See also Chassis Master Corp.,* 610 F.Supp. at 476 (comparing the appearance, pronunciation and suggestion of the marks).

It is undisputed that Wal–Mart features the registered term "Battery Tender" on its battery charger. Wal–Mart does not use the lightning bolt insignia and/or stylized font that Deltran uses on its "Battery Tender" mark. Wal–Mart does not use the Deltran name on its products. Rather, Wal–Mart displays its own mark, EverStar, to designate the source of its product.

### 3. Similarity of Products

The greater the similarity between products and services, the greater the likelihood of confusion. *Exxon Corp. v. Texas Motor Exchange*, 628 F.2d 500, 505 (5th Cir.1980). The parties agree that their products are very similar—*i.e.*, battery chargers.

### 4. Identity of Purchasers and Similarity of Retail Outlets

Likelihood of confusion is more probable if the products are sold through the same channels to the same purchasers. *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1541 (11th Cir.1986). Deltran sells its products through specialized retail outlets. Nonetheless, this Court finds it likely that many of the shoppers of these retail outlets will also be the general retail shoppers at Wal–Mart—a factor that weighs in favor of Deltran.

### 5. Similarity of Advertising Campaigns

If a plaintiff and defendant both use the same advertising media, a finding of likelihood of confusion is more probable. *AmBrit, Inc.*, 812 F.2d at 1542. A court may properly consider the overall advertising campaigns. *Freedom Sav. and Loan Ass'n*, 757 F.2d at 1185. Wal–Mart claims that it has done no advertising of its battery charger product. To the extent that the product's labeling can be considered advertising, Wal–Mart contends that the labels do not convey any association between Deltran and Wal–Mart, particularly since the term is only used in conjunction with Wal–Mart's EverStar mark. The tone and style of the "advertisements" (labeling) is sufficiently dissimilar as to sug-

gest that the advertising/labeling campaigns of the parties, apart from the use of the mark "Battery Tender" on the label, would not further contribute to the likelihood of confusion.

### 6. Defendant's Intent

Likelihood of confusion may be established by evidence that a defendant intended to benefit from the reputation of a plaintiff's service or product by inducing confusion. J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 23.32[1]. If a person intends to induce confusion among customers, he or she is likely to succeed. *Freedom Sav. and Loan Ass'n*, 757 F.2d at 1185. Therefore, consideration of intent of the defendant is relevant to an analysis of likelihood of confusion. On the evidence before the Court, Wal–Mart did not intend confusion.

### 7. Actual Confusion

Although evidence of actual confusion is not necessary to a finding of likelihood of confusion, it is nevertheless the best evidence of likelihood of confusion. *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 978 (11th Cir.1983) (quoting *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 263 (5th Cir.1980)). Actual confusion by a few customers may be evidence of likelihood of confusion by many customers. *Freedom Sav. and Loan Ass'n*, 757 F.2d at 1185. Therefore, a plaintiff usually will not have to prove more than a few incidents of actual confusion. *Id.* The Court may properly consider evidence of confusion from either direct purchasers or end users. *See BellSouth Advertising & Publishing Corp.*, 792 F.Supp. at 783. Deltran's only example of actual confusion involves a consumer who may have stated that he could purchase the Deltran's Battery Tender battery charger at Wal–Mart for $17.00 to $18.00. *See* Docket No. 15, Sabatini Decl., ¶¶ 1–2. Standing alone, one incident does not establish the likelihood of actual confusion.

In sum, after balancing the seven factors, the Court finds that Deltran has not met its burden of establishing a likelihood of confusion. The similarity of the products and identity of purchasers weigh in favor of a finding of likelihood of confusion. However, due to the weakness of Deltran's mark, the lack of Wal–Mart's intent to gain a competitive advantage by associating its product with Deltran's established mark, the dissimilarity of the font and style of the two marks,[4] and the lack of actual evidence of confusion, the Court concludes that a likelihood that consumers will be confused about the relationship or affiliation between Deltran's products and Wal–Mart's product has not been proved. For this further reason, Deltran fails to demonstrate a substantial likelihood of success on its trademark infringement claim, and the motion for a preliminary injunction should be **DENIED.**

### V. SUBSTANTIAL THREAT OF IRREPARABLE INJURY

 To establish irreparable injury, Deltran must show that it will suffer an injury that cannot be adequately compensated if, at some later point in time, it prevails on the merits. *United States v. Jefferson County,* 720 F.2d 1511, 1520 (11th Cir.1983). As the Supreme Court stated:

> The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

*Sampson v. Murray,* 415 U.S. 61, 90, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974) (citation omitted). Deltran has failed to show that Wal–Mart's use of the term "Battery Tender" will cause it irreparable harm.

As described above, Deltran failed to provide sufficient evidence that it built any goodwill with consumers or that consumers associate the "Battery Tender" product with Deltran. Indeed, Deltran has provided absolutely no evidence of irreparable injury.

On the other hand, Wal–Mart has not done any external advertising of its battery charger product and uses the term "Battery Tender" only in conjunction with its Wal–Mart "EverStart" mark. Moreover, Wal–Mart will not reorder the product with the term "Battery Tender," until such time as this Court makes it clear that it could do so safely.[5] Based on the evidence introduced thus far, this Court finds that any injury caused by Wal–Mart's use of the "Battery Tender" mark can be repaired by cash damages. Because Deltran failed to demonstrate a substantial threat of irreparable injury, Deltran's motion for preliminary injunction should be **DENIED.**

### VI. CONCLUSION

Although Deltran could prevail after a full trial on the merits, Deltran has not met its burden of proof for obtaining for injunctive relief. Therefore, it is recommended that Deltran's motion for preliminary injunction be **DENIED.** Failure to file written objections to the proposed findings and recommendations in this report pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 6.02 within ten (10) days after its service shall bar an aggrieved party from a *de novo* determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the factual findings on appeal.

---

**4.** The Court recognizes that the words "Battery Tender" were registered, not any stylized text of those words.

**5.** At this juncture, this Court cannot provide Wal–Mart with any assurance associated with Wal–Mart's use and/or continued use of the "Battery Tender" mark.